## John Loyd *v.* Edward Fox.

The plaintiff, being tenant of certain premises under a hiring for one year, paid to the water commissioners the charge for the use of the Croton water therein, for that year. After four months, he gave up the possession, and the landlord relet the premises, for the residue of the year, to the defendant, who took posession and used the water. It was by the plaintiff's agency in procuring the new tenant, that the reletting was effected. *Held*, that the defendant was not liable to the plaintiff, for any part of the water rate so paid by the latter, nor for the value of the water used, nor, in any form of action, for using the same.

It is not proper for a justice, in a case before him, to volunteer and make amendments of the pleadings, not moved for by either party.

Appeal by the defendant from the first district justice's court, where the plaintiff (respondent) obtained judgment. The case established by the evidence, is stated in the opinion.

*Joseph Husson,* for appellant.

*Wessel S. Smith,* for respondent.

By the Court. Woodruff, J.—In this action the plaintiff declared for money paid for the use of the defendant, under the following circumstances : The plaintiff, as tenant of one Schuchardt, had occupied the house, No. 203 Fulton street, which he had hired for one year, from the 1st May, 1848, till 1st May, 1849. While in such occupation, he had paid to the Croton water commissioners twelve dollars for the use of the Croton water during the year.

In August, the plaintiff desiring to remove, gave up the premises, and his landlord relet the same to the defendant. And the evidence shows that it was through the negotiations or agency of the plaintiff that the new tenant was procured, though he finally came in as lessee of Schuchardt, and not as under tenant to the plaintiff. There was, also, some evidence that the plaintiff's hiring was at a rent of $750 per annum,

while the defendant agreed to pay at the rate of $800 per annum. But it does not appear whether the plaintiff derived any benefit from the reletting at the enhanced rate; nor is there any evidence that the privilege of using the Croton water formed any part of the consideration for the increase of the rent. On the contrary, the fact that the defendant never claimed the right as against the plaintiff, repels any such supposition.

The defendant took possession on or about the 1st of September, 1848, and occupied until 1st May, 1849, and it appears that the plaintiff called upon him, and claimed payment for the use of the Croton water for the unexpired period of eight months. The defendant refused to pay it, and told the plaintiff he might go to the water commissioners and get back his money, which the plaintiff said he would do. Subsequently the plaintiff called, and stated that he could not get back his money, and threatened that if the defendant did not pay him, he would cause the supply of water to be stopped; but the defendant still refused, and the plaintiff told him if he used it he should pay for it. The date of these conversations is not given, but it appears that on the 23d September, the plaintiff gave defendant a written prohibition, "*notifying and forbidding*" him to use the Croton water in the house No. 203 Fulton street, until he paid plaintiff $8 00 therefor.

The defendant used the water in the house, and this action is thereupon brought; and the justice gave judgment for the plaintiff for $8 00 and costs.

On the trial the justice amended the complaint, so far as it appears of his own mere motion, and against the will of the defendant. It is certainly not the duty of the justice, nor do I conceive it proper for him, to volunteer to make amendments of the pleadings not moved for by either party. But I do not regard this as very material, since there are, in my opinion, fatal objections to this judgment upon the merits.

The amendment allowed did not in fact, according to its literal reading, alter the ground of the action. The complaint, before the amendment, read thus: "for $8 00, money paid for

Croton water for his use for nine months, ending on the 1st day of May last (1849 ;)" and the justice added, "for the use of the Croton water for that period." So that the complaint, as amended, read thus : "The plaintiff complains, &c., against the defendant, for $8 00, money paid for Croton water, for his use, for nine months ending on the 1st day of May last, (1849,) for the use of the Croton water for that period."

The cause of action is still according to the letter of the complaint, money paid to the defendant's use.

But as the amendment is senseless and redundant in this view, I must conclude that the object of it was to change the cause of action by converting the complaint into a claim to recover for the use of the Croton water, instead of a claim for money paid, &c.

For the purpose of disposing of the case upon the merits, I will consider the complaint in both aspects.

*First.*—The money was not paid by the plaintiff for the use of the defendant, but for his own use. The action does not lie in this form, unless the payment was made both for the use of the defendant and at his request, either express or implied. Here was, of course, no express request—and at the time the payment was made the defendant had no connection with the subject matter in any way. No benefit to him was in the mind of the plaintiff. No duty to make the payment rested on the plaintiff. The payment by the plaintiff was to secure to himself a privilege or right to use the water, and was no more a payment for the use of the defendant, than the purchase of a horse for the plaintiff's own use would have been. Whether the taking and use of a horse, belonging to the plaintiff, would make defendant liable for such use or not, it certainly would not sustain an action for the price of the horse as money paid for defendant's use. So of a purchase of goods by the plaintiff for his own benefit, a part of which he afterwards delivers to defendant, and he takes and consumes them—the action therefor is for goods sold, not for money paid. The promise which the law implies, is to pay for the goods, not to repay money.

That this form of action cannot be sustained is too plain to require, or even to admit of, much argument; the transaction is wanting in all the essential requisites to sustain the action.

The payment was not for the use of the defendant. It was not by his express request. It was not founded in any duty owed by the defendant, nor in any obligation which the plaintiff was bound to discharge for defendant's benefit, nor in any privity between the plaintiff and defendant of any sort whatever, but a voluntary payment by plaintiff, for his own benefit solely. The law, therefore, implies no promise by defendant to repay the money.

*But, second.* Did the defendant, by using the Croton water after he took possession of the house, subject himself to an action for such use?

And it may not be amiss to inquire whether any form of action, whether trespass, trover or assumpsit, under our former divisions of actions, would lie against him.

The case is somewhat novel in its circumstances, and, probably, no case precisely like it can be found. Still, I apprehend no difficulty in disposing of the questions involved.

The plaintiff, after he gave up the house, neither owned nor had any interest whatever in the water pipes nor stop cocks upon the premises, and the possession he had voluntarily abandoned.

The plaintiff *never* had any property in the water itself. That belonged to the corporation. He could not allege of any drop contained in the great reservoir, "that is mine."

The defendant, therefore, neither trespassed upon, nor interfered with, the plaintiff's possession, nor injured nor converted his property; for the plaintiff had neither the one nor the other in the water, nor in the fixtures through which it was drawn. Hence, neither trespass nor trover would lie against him. The plaintiff never acquired anything by his license from the water commissioners but a *right*, as between him and them, to draw and use water in that house—a license. This right, or license, was not infringed by the defendant. On the contrary, when the plaintiff gave up the house, although he did not, as between him and the water commissioners, forfeit his license, or

give up his right, he voluntarily rendered it worthless, for he could not enjoy it. The defendant took nothing from him, and did not claim to have, or use, any possession or privilege which but for such use the plaintiff might himself have enjoyed.

For like reasons, the action of assumpsit could not be maintained, even if it were conceded that the peculiar circumstances created a moral or honorary obligation to reimburse the plaintiff, when it was discovered that the water commissioners would not refund. This is not sufficient to sustain the action without an express promise, even if it would have been a sufficient consideration to support such an express promise, and there must be a legal obligation shown, before the law implies a promise.

The defendant refused to have any dealings with the plaintiff. Told him, distinctly, to go to the water commissioners and get back his money; and on being informed that they would not refund, made no objection to the plaintiff's cutting off the supply, which he told the defendant he would do.

The defendant had a perfect right to make his own bargain with the water commissioners, and the plaintiff having given up the possession of the premises, and lost all means of using the right he had acquired by his payment to them, could interpose no obstacle to the defendant's making any arrangement he thought proper.

But if the argument of the plaintiff is sound, the plaintiff had such a property in the water which might flow through the pipes, that he might not only require, as a condition, the payment by the defendant of any sum, however exorbitant, therefor; but might refuse, and actually prevent, the defendant's using the water, upon any terms whatever; and this in spite of the water commissioners, also.

This cannot be, and if not, the action cannot be sustained. The case bears no analogy to the appropriation of a plaintiff's goods to the defendant's use. There is *property* of which the plaintiff is deprived, and which the defendant requires, and so becomes liable for its value, not for what plaintiff *paid for it*, but for its *value*, which must be proved.

The case bears some analogy to the case of a voluntary payment of another's debt, which, from the nature of the case, enures to the benefit of the debtor, but for which no action lies against him by the voluntary payor.

An example may be stated of a case which is probably more nearly analogous. A tenant hires or buys the privilege of drawing water from the mill pond of an adjoining proprietor, for the purposes of irrigation, but surrenders his lease while the privilege is still subsisting. An incoming tenant might, perhaps, be liable to the proprietor of the mill pond, if he drew water for the like purpose, but the outgoing tenant could maintain no action against him. No property nor possession of his has been interfered with.

I cannot perceive that the defendant in this case was guilty of any trespass on the plaintiff's rights, or that he converted any property of the plaintiff, or that he placed himself under any such legal obligation, that the law can imply a promise to pay anything.

The plaintiff, before he gave up the possession, should have made his bargain with his landlord, or with the defendant, so as to secure reimbursement. If he has not done so, he is without remedy, and must, as between these parties, be deemed to have abandoned all legal claims with that possession, without which his license was worthless.

Had the defendant insisted upon his right to use the water, upon the ground that the plaintiff yielded all the incidental benefits to him, upon his consenting to take the premises, and to pay an enhanced rent of $50 per annum, which it appears he agreed to pay, I should have deemed the presumption strong, if not conclusive, that the plaintiff had not even a naked right, but that the license was vested in the defendant himself. But it is not necessary to pursue the inquiry whether, under all the facts proved, that is so or not.

The judgment must be reversed, with costs.